Marshall, C. J.
 

 Several questions are presented for determination:
 

 (1) Does mandamus lie to compel the Governor to abrogate such suspension and removal order and to compel the Governor to restore relator to his office?
 

 (2) Did the Governor have jurisdiction to hear and determine charges against the chief of police of the city of Youngstown and to order his removal from office?
 

 (3) If the Governor had any jurisdiction, does it extend beyond an inquiry into the failure to enforce liquor laws?
 

 (4) Were the charges sufficient to constitute “misfeasance, nonfeasance or malfeasance or willful neglect, or failure, to enforce the laws relating to intoxicating liquors”?
 

 (5) Was any competent evidence introduced to sustain the charges?
 

 (6) What is the effect of the institution of a charter city government, on January 1, 1924?
 

 The foregoing questions are so interrelated, and separate and distinct questions presented are so dependent upon legal principles applicable to all questions, that it will not be possible to discuss them in their order. We will, however, first determine whether mandamus is a proper remedy.
 

 It is undoubted and undisputed that in the proper case this court may issue a writ of mandamus
 
 *500
 
 directed to the Governor of the state. This proposition was settled as early as the case of
 
 State ex rel. Whiteman
 
 v.
 
 Chase,
 
 5 Ohio St., 528. It was declared in the same case that this could only be true in seeking to compel the performance of a ministerial act and not to control the action of the Governor in matters in which he may lawfully exercise a discretion. These principles have been discussed in later oases, but the principles clearly laid down in that case have never been overruled or departed from. In the celebrated case of
 
 Marbury
 
 v.
 
 Madison,
 
 1 Cranch, 137, 170, 2 L. Ed., 60, in which the writ was indirectly but virtually directed against the President of the United States, the true principle was declared in the following terse language:
 

 “It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus, is to be determined.”
 

 As to what constitutes a ministerial act, there is no lack of definition, but we know of no definition more accurately stated than that found in
 
 State ex rel. Trauger
 
 v.
 
 Nash,
 
 66 Ohio St., 612, 618, 64 N. E., 558, 559:
 

 “A ministerial act may, perhaps, be defined to be one which a person performs in a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to or the exercise of his own judgment upon the propriety of the act being done.”
 

 This feature of the case therefore turns upon the question whether or not the Governor has been clothed with authority to exercise a discretion.
 
 *501
 
 and whether, by virtue of the Constitution and the statutes enacted pursuant thereto, the Governor has authority to file charges, hear evidence, and remove a chief of police of a municipality from office.
 

 This is only another way of putting the question whether the Governor had jurisdiction to hear and determine charges against a chief of police and how far that jurisdiction extends under Section 6212-34, General Code, which brings the second and third questions under consideration into close relation with- the first question.
 

 The general jurisdiction of the Governor in matters of removal was before this court in the case of
 
 State ex rel. Vogt
 
 v.
 
 Donahey, Governor,
 
 108 Ohio St., 440, 140 N. E., 609, and the views of all the members of this court are set forth in the
 
 per curiam,
 
 concurring, and dissenting opinions. Regardless of the individual views of the members of this court, it became settled by that pronouncement that Section 6212-34 is constitutional; that question being one of the questions argued in the case and necessarily decided, although the opinions-contained no discussion of that feature. That case also established the proposition that this court, in any collateral proceeding in which the decision of the Governor is under consideration, will only inquire whether the charges filed in the office of the Governor allege misfeasance, nonfeasance, or malfeasance or willful neglect or failure to enforce the laws relating to intoxicating liquors, and whether any competent evidence was introduced in support of those charges. As to the form and substance of the charges, we have no
 
 *502
 
 difficulty in reaching the conclusion that they are sufficient in both form and substance, and that there is nothing obscure or indefinite as to misfeasance, nonfeasance, or malfeasance, because these terms must relate to failure to enforce the laws relating to intoxicating liquors, and the charges clearly so specify.
 

 Upon the question whether any competent evidence was adduced in support of the charges, we do not hesitate to say that the record does disclose evidence of that character, and this court will not weigh or measure the quality or quantity of the evidence to determine whether the decision of the Governor was justified.
 

 It follows, therefore, that the Governor had jurisdiction in this case under Section 6212-34, General Code, unless that section should be held not to be operative in any attempt to remove a chief of police.
 

 This brings us to a consideration of the statutes relating to the appointment and removal of municipal appointees under the civil service statutes of the state. Section 6212-34, General Code (109 O. L., 9), in its pertinent provisions, reads as follows:
 

 “The Governor shall have authority to remove any official for misfeasance, nonfeasance or malfeasance or willful neglect, or failure, to enforce the laws relating to intoxicating liquors. * * * The judgment of the Governor upon the hearing provided herein shall be final. He shall file in the office of the secretary of state a statement of all the charges made against such officer and the result of his finding thereon.” .
 

 The constitutionality of these sweeping provis
 
 *503
 
 ions must be measured by Section 38, Article II, of the Constitution, as amended- September 3, 1912, which provides:
 

 “Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the General Assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the Constitution.”
 

 There can therefore be no question of the power of the Legislature to enact that section, and this is not seriously disputed, but it is contended that, inasmuch as other provision is made for removal of city employes coming under the civil service statutes, and inasmuch as those provisions are of special nature, any action for the removal of such municipal employes must be remitted to the civil service provisions. On the other hand, it is apparent that Section 6212-34 is a special provision relating to the enforcement of the liquor laws, and it cannot be said that one is more special than the other. If we look to the constitutional provisions relating to civil service matters, it will be found that the Constitution is much less positive and emphatic in the civil service provisions than in the other constitutional provisions relating to removal from office. Section 10 of Article XV provides:
 

 “Appointments and promotions in the civil service of the state, the several counties and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive
 
 *504
 
 examinations. Laws shall be passed providing for the enforcement of this provision.”
 

 Pursuant to this constitutional provision, the Legislature has enacted a code of civil service laws making ample provision, not only for appointments and promotions in the state, county, and city governments according to merit and fitness, and, although not specifically required to do so by the constitutional provisions, has very properly made ample provision for removals by the various civil service commissions of the cities, counties, and state. The grounds for such removal are quite as broad as the grounds set forth in Section 6212-34.
 

 Inasmuch as all statutes relating to removal from office are the product of legislation, all authorized by the Constitution, and no limitations whatever having been placed upon the jurisdiction of the Governor in the exercise of the power of removal reposed in him, we are forced to the conclusion that no limitation was intended by the Legislature, and that that power is concurrent with, and in addition to, the power conferred by the civil service statutes relating to municipal appointees and employes. It seems clear therefore, that the Governor was acting within the jurisdiction conferred upon him, and that he had power to hear and determine charges against a chief of police of a municipality relating to a failure to enforce the liquor laws, and it requires no argument to show that this determination was a matter involving discretion, and that this court may not therefore order him to revoke and rescind his action upon the theory that such action on his part would be a mere ministerial act
 
 *505
 
 which could be commanded by the extraordinary writ of mandamus.
 

 The foregoing discussion disposes of all questions in the case, except that relating to the effect of the institution of a charter city government on January 1, 1924. It is apparent that this change in the city government of the city of Youngstown has made a large portion of this controversy a moot question. There could not be any restoration to office since the office held by James Watkins has been abolished and a new one instituted in its place. There could not in any event be more than a determination of his right to salary from the date of his removal to January 1, 1924. The conclusions we have reached would deny him that right.
 

 For the foregoing reasons the writ must be denied, and the cause dismissed at relator’s costs.
 

 Writ denied.
 

 Robinson, Matthias, Day and Allen, JJ., concur.
 

 Wanamaker, J., not participating.